Good morning, Your Honors. Michael Drake for Felix McKeese MacDonald. I'm hoping to reserve at least two minutes, and I know it's on me to watch the clock. I just want to make a couple of quick points about the Jackson claim, focusing solely on the specific intent prong, because I think that's the easiest basis on which to decide this case. To prove the specific intent element, the prosecution was supposed to present enough evidence so that a rational juror could conclude that McKeese committed the 2001 robbery with the specific intent to promote further or assist in criminal conduct by gang members. There is just not a shred of evidence of that in this record. There is evidence that McKeese committed the robbery alone, and there is evidence that McKeese was a member of a gang. But under binding California Supreme Court precedent, that's clearly not enough to bring this robbery within the gang enhancement. So I think the only real dispute in this case is whether the gang officer's opinion testimony makes any difference on that sport, and at least as far as the specific intent prong goes, it clearly doesn't, because the gang officer didn't even purport to give an opinion on that element. So the record couldn't possibly be more bereft of evidence, and it's just a total failure of anything that even resembles proof. So I think for those basic facts, the State Court's rejection of the Jackson claim was unreasonable. I'm happy and eager to answer any questions the Court has, but also happy to reserve the remainder of my time. Thank you. May it please the Court, Daniel Rogers, Deputy Attorney General for the Warden. Your Honors, in this case, there were certain facts related to the robbery outside Jenny's Restaurant that might appear to the lay observer not to be gang-related until explained by the gang expert. Those include the fact that- Without the gang expert, you would not have a case. Without the gang expert, we would not have been able to prove the gang allegation. I think that is correct. Okay. Those facts include who committed the robbery. In this case, Mr. Mockies is a member of PMV. That was established through the testimony of the gang expert where the robbery was committed. This was in PMV territory. PMV, at Excerpts of Record 117, the expert says, you want the people to know you're the ones that run that area and you don't want to mess with PMV. You know because we're the ones that are in charge of this area, this is our turf. We have the type of crime. This is an armed robbery. The expert testifies that this is a primary activity of Paris Maravilla, the PMV gang. Given all of that, the expert explains that you have the increase in fear and respect in the community that is produced by committing armed robberies in gang territory, and you also have the material proceeds of the robbery. But the material proceeds weren't shared with the gang. We have no evidence of that, do we? Well, we have the expert's testimony that, and I would refer the court to Excerpts of Record 117. First of all, to more directly answer your question, we have no direct evidence of that. We have an inference from the expert's testimony that, and I'm quoting here, he's going to share those things with other members of the gang. But that's just general testimony about what gang members generally do. So let me ask you this hypothetical question. Yes. If we assume that someone in Mr. McKee's position wanted to commit an armed robbery in that area, totally for his own benefit and without any intent to benefit the gang, without any desire to tell the gang what he was doing, without any desire to share the proceeds of the robbery with the gang, what would the facts of that case look like, and how would they be different from the facts of this case? Well, I think in one sense, Mr. McKee would likely, to go to the court's hypothetical, make some effort to disguise his identity. He made no effort to disguise himself in this case. PMV is the largest gang in the area. The people that live in this community know about the gang. They, I mean, that's the whole point of the respect issue. He made no, now, I will admit that the record contains no evidence that he used gang signs or anything of that nature, but he made no attempt to conceal his identity. If he wanted to go on a lark, if you will, to, not a lark, but. A solo, a solo adventure. Exactly, a solo adventure. Yes. He would have to conceal the fact that the gang was involved and that he was involved. I mean, the gang, from Deputy Brewer's testimony, it's clear that. You're putting a burden on the defendant there. And the way I read the California Supreme Court's decision in People v. Albalar, not every crime committed by gang members is related to a gang. And I ask what is the evidence that this crime was related to a gang when you tell me it was committed by a gang member in gang territory and it's the type of crime that sometimes gang members commit. Now, we know that this man committed other crimes earlier for the gang in the presence and with other gang members, but this particular 2001, I ask myself, where's the evidence that it's not a solo adventure? And I guess other than you're saying, well, he made no attempt to disguise his identity, there's no other evidence that would support a conclusion that it wasn't a solo adventure. How am I looking at it incorrectly? Well, Your Honor, I'd make two points in response to that question. First of all, if I could go back to the hypothetical of what a solo adventure would look like. More than just disguising his identity, he could also commit the crime outside of gang territory. Go commit an offense in Pasadena, for instance, where PMV has no presence. So it is conceivable that a defendant can commit a crime outside of the gang, not for the purpose of benefiting the gang. I think Avalar makes that clear, as does the Court's hypothetical. But to go to the last question that the Court asked, I would say that there is an inference that a reasonable jury could be drawn. And again, this is a Jackson case under 2254. So ‑‑ Well, counsel, usually in the gang expert testimony, you get all these generalized opinions about this is the gang territory. Here's who controls the territory. That's where they usually commit these sort of crimes. Respect is a big deal. But that generalized gang expert testimony is usually tethered to something in the way that the nature of the crime was committed itself. And there's an absence of that in the record here. So it's almost as if the expert is saying, well, he's a gang member. And that's the only link, despite the fact that nobody knew, none of the victims knew that he was a gang member. He wasn't wearing gang clothing. He didn't flash gang signs. Nothing ties the expert's testimony to the crime itself, other than his opinion that he's a gang member. So in all likelihood, he would have discussed it with the gang. It must be for the benefit of the gang. Where is that connection, that nexus that's usually present? Even on a Jackson standard. Well, Your Honor, I don't think that the California courts have ever required any specific type of evidence. So I don't know that I can point the court to any additional facts that I've not already mentioned beyond his membership, the location, the type of crime. I don't think the California courts have ever required direct evidence in the sense of gang clothing, gang tattoos, gang signs, that sort of thing. I think there is an inference that can be drawn. I think that another court might reasonably conclude that those inferences are weak enough not to satisfy the Jackson standard. But that doesn't result in relief under 2254 in this case. Because again, I think the jury could take the facts, sparse as they are, and with the expert's testimony that this is what those things mean with respect to PMV, that's enough to satisfy the Jackson standard. Would it satisfy every court hearing these facts in the first instance? Maybe not. Would it satisfy every jury in the first instance? Maybe not. But it's enough to satisfy the Jackson standard in 2254. And I think that the situation that Your Honor is describing is exemplified in the Perez case that was the subject of the 28J letter filed by counsel, where a gang member went outside of gang territory and committed a violent offense at a party. In that case, I think that case is the hypothetical that Your Honor was asking about earlier. Here, again, we have not just a gang member, but a gang member committing one of the primary types of crimes this gang commits in gang territory. I think, again, it is enough to satisfy the Jackson standard. So if the expert were to take the stand and said, every single gang member who commits a crime within this geographical area, therefore must be committing it for the purposes of the gang, would that be too speculative or would that be sufficient to support the conviction? That would likely be too broad. Again, it's... Well, then what's different about that in this particular case? Isn't that tantamount to what this particular expert is saying? This particular expert, again, particular types of crime. In Your Honor's hypothetical, any crime. There's evidence from Deputy Brewer that specific types of crimes are committed by the gang. This isn't a situation where a gang allegation was made as to a DUI charge or something where there is absolutely no evidence that the gang is involved in that kind of criminal activity. So I think that would be the overbreadth in Your Honor's hypothetical. Thank you, counsel. Your Honors, I don't... None of that has anything to do with specific intent, territory or not. Well, why isn't it circumstantial evidence of specific intent? Well, because territories make weight. I mean, it's... Sorry, Your Honor. That he made no attempt to disguise himself, that he stayed within the gang territory and that he intended to commit an armed bank robbery. Why isn't that sufficient, especially under a doubly deferential standard, to be circumstantial evidence of specific intent? Well, so first, there's no evidence that robbers systematically conceal themselves, and I can tell you from personal experience that they frequently don't. I don't know. I just tried a bank robbery case where he put on a surgical mask, big sunglasses, and a baseball cap. It happens. It happens, Your Honor. But I don't... I mean, there's no evidence here that that, right, on the record. Did the expert in this case talk about disguising yourself if you're committing a crime? I believe... I don't recall, Your Honor. Sorry. But I'll say about territory, territories make weight because, you know, if it's in territory, the experts will testify, well, that shows that he was relying on the gang's control of the territory. If the crime was committed outside territory or in rival territory, the expert will say that, well, that shows the gang is trying to expand its operations, and I'm not exaggerating. People v. Franklin is one such case. So I just... I don't think territory gets you anywhere. And it certainly... It might speak to the first element in some cases, particularly where there's gang rivalries involved. That's when territory becomes relevant. I don't... I've read the 50 or 55 or so published cases dealing with the sufficiency of the substantive prongs of the gang enhancement. I don't think I've ever seen a case... I'm sure that I've never seen a case where territory made the difference except where there was a gang rivalry and it was the dispute, you know, the crime arose out of a dispute over territory. The spoils testimony, you know, the idea that he was going to share the... It wasn't an inference. It was just speculation. It was in the language of speculation, right? So, I mean, I could go on, but I think, unless you have any further questions, I would just submit your honors. Thank you, counsel. Thank you. The case that's argued will be submitted.
judges: Reinhardt, Nguyen, Simon